# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

**KENDRICK DEWAYNE SMITH**                                                **PLAINTIFF**

**v.**                                                     **CIVIL ACTION NO. 5:13cv192-MTP**

**SCOTT K FRYE, ET AL.**                                             **DEFENDANTS**

## OPINION AND ORDER

THIS MATTER is before the Court on the Motion for Summary Judgment [49] filed by Defendant Dr. Charles Borum, the Motion for Summary Judgment [54] filed by Defendants Charles Mayfield and Captain Ed Tucker, and the Motion for Summary Judgment [58] filed by Defendant Scott Frye. After careful consideration of the motions, the submissions of the parties, and the applicable law, the Court finds that the Motions [49], [54] and [58] should be GRANTED and this matter be dismissed with prejudice.

## BACKGROUND

Plaintiff Kendrick Dewayne Smith, proceeding *pro se* and *in forma pauperis*, filed the instant civil rights action on or about September 16, 2013.[1] Plaintiff is a post-conviction inmate currently incarcerated at Walnut Grove Correctional Facility. The alleged events giving rise to this lawsuit occurred while the Plaintiff was a pre-trial detainee housed at the Natchez City Jail ("NCJ") and in custody of the Adams County Jail ("ACJ"). Plaintiff's claims and his requested relief were clarified and amended through his sworn testimony at a *Spears*[2] hearing held on May 16, 2014.[3]

---

[1] *See* Complaint [1] at 4.

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[3] The contents of the hearing were set forth in the Omnibus Order [33].

Plaintiff alleges claims of deliberate indifference to his serious medical needs in connection with the treatment of a gunshot wound and nerve damage. Specifically, Plaintiff alleges that on June 24, 2011, following his arrest by law enforcement authorities, doctors at Natchez Regional Hospital ("NRH") treated him for a gunshot wound to his left shoulder and back. He alleges that he sustained injuries to his tendons and nerves in the affected area. Following his surgery, Plaintiff alleges that he was transferred to the University of Mississippi Medical Center ("UMMC") in Jackson. At UMMC, Plaintiff alleges that a neurologist prescribed him Endocet (a generic form of Percocet), and advised him and the officer escorting the Plaintiff that surgery was necessary to prevent nerve damage. However, the neurologist also stated that UMMC policy required a prisoner to exhaust all other state hospital options before he could perform the surgery.[4]

Natchez police officers transported Plaintiff from UMMC to the NCJ on June 26, 2011. According to the Plaintiff, he was in the custody of the Adam's County Sheriff's Department, but was held in the NCJ for the majority of the time that he was a pre-trial detainee. Plaintiff alleges that while he was held at the NCJ, a relative made arrangements for him to see Dr. Ibrahem Seki, a family physician. He alleges that Defendant Captain Frye, a Natchez police officer and captain of the city jail, escorted him to the appointment. Plaintiff alleges that Dr. Seki recommended to Captain Frye that he locate a doctor to perform surgery on the Plaintiff. Thereafter, Plaintiff alleges that Frye and Dr. Seki located a doctor in Vicksburg. The surgery, however, was never performed. Plaintiff alleges that his brother contacted the Adams County Sheriff's office regarding the surgery, but that the Sheriff's office informed him that a court order would be required.[5]

---

[4]*Id.* at 2.

[5]*Id.* at 3.

Plaintiff alleges that although he was housed at the NCJ, he received treatment at the ACJ. Plaintiff alleges that Dr. Charles Borum examined him on two occasions and prescribed him anti-anxiety medication. He alleges that he asked Dr. Borum for physical therapy because his medication was not working, but that Dr. Borum declined to prescribe additional treatment or medication. Plaintiff claims that Dr. Borum should have known that Plaintiff required further treatment and should have provided it.[6]

Finally, Plaintiff asserts claims against Adams County Sheriff Charles Mayfield and ACJ Captain Ed Tucker. Plaintiff claims that as individuals with supervisory responsibilities, Sheriff Mayfield and Captain Tucker should have provided him with adequate medical treatment. However, Plaintiff concedes that he never spoke or corresponded with Mayfield or Tucker regarding his treatment and does not know whether either of them were aware of his requests for treatment. Plaintiff also claims that Mayfield should not have implemented a policy that requires a court order to receive certain medical treatment.[7]

Plaintiff alleges that as a result of the inadequate medical treatment, he has suffered permanent nerve damage and pain. Plaintiff states that he has brought claims against the Defendants in their individual capacities. He requests compensatory and punitive damages in the amount of $300,000.[8]

## STANDARD

A motion for summary judgement will be granted when "the record indicates that there is

---

[6] *Id.*

[7] *Id.*

[8] *Id.*

3

'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The court must view "the evidence in the light most favorable to the nonmoving party." *Id.* However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 ((emphasis omitted). The nonmovant cannot survive a proper motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir. 1988); *see also Celotex*, 477 U.S. at 325-26. Instead, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## **ANALYSIS**

At the *Spears* hearing in this matter, Plaintiff indicated that he is suing the Defendants in their individual capacities.[9] In response, Defendants have raised the defense of qualified immunity. The United States Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The United States Court of Appeals for the Fifth Circuit "has repeatedly held that objective reasonableness in a qualified immunity context

---

[9]*Id.*

4

is a question of law for the court to decide, not an issue of fact." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 256 (5th Cir. 2005); *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999); *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994). Courts evaluating Section 1983 claims should conduct a two-prong inquiry to determine whether defendants are entitled to qualified immunity. First, "whether a constitutional right would have been violated on the facts alleged," and second, "whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 14, 200 (2001)). In *Pearson v. Callahan*, the United States Supreme Court held that while the sequence of analysis set forth in *Saucier* "is often appropriate, it should no longer be regarded as mandatory." 555 U.S. 223, 236 (2009). Thus, the Court is permitted to exercise its discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *Id.*

Once the defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon*, 305 F.3d at 323. "The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority." *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992). Because Defendants have raised the defense of qualified immunity in their motions for summary judgment, Plaintiff "can no longer rest on the pleadings ... and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the [qualified immunity analysis]." *McClendon*, 305 F.3d at 323 (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). Accordingly, this Court must examine the summary judgment record and determine whether Plaintiff has adduced sufficient evidence to raise a genuine issue of material fact suggesting that Defendants' conduct violated an actual constitutional right for each claim, and whether their conduct was objectively unreasonable in light of clearly established law. *McClendon*, 305 F.3d at 323.

**Deliberate Indifference to Medical Needs**

Plaintiff alleges that Defendants Dr. Charles Borum, a physician at the ACJ, and Captain Scott Frye, an administrator at the NCJ, were deliberately indifferent to his medical needs. First, Plaintiff asserts that Defendant Borum denied his requests for additional medication and physical therapy. Second, Plaintiff alleges that Defendant Frye failed to ensure that he received a surgery that Plaintiff claims was ordered by his physicians.

A prison official violates the Eighth Amendment when he acts with deliberate indifference to a prisoner's serious medical needs. *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 754 (5th Cir. 2001). Although Plaintiff was a pre-trail detainee as opposed to a post-conviction inmate at the time of the alleged events, the analysis of his medical claims are governed by the deliberate indifference standard. *See Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996). For a prison official to be liable for deliberate indifference, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference is "an extremely high standard" that encompasses "only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997).

Deliberate indifference is particularly difficult to establish when the inmate was provided with ongoing medical treatment. "Unsuccessful medical treatments, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346 (citations omitted).

The plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Complaints that more treatment should have been ordered, without more, are insufficient to show deliberate indifference. *See Domino*, 239 F.3d at 756 ("[T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment.").

### *Defendant Dr. Charles Borum*

Plaintiff alleges that Dr. Borum provided him inadequate medical care during his detention at the NCJ and ACJ. Specifically, Plaintiff argues that Dr. Borum wrongfully denied his requests for physical therapy and additional medication, despite Plaintiff's complaints that his medication did not work and that he suffered from pain in his arm.

In this case, Plaintiff's sworn testimony at the *Spears* hearing indicates that Dr. Borum provided him with at least some medical care. At the hearing, Plaintiff testified that Dr. Borum examined him on two occasions and prescribed him medication for pain and anxiety. He further testified that Dr. Borum did not refuse to treat him, only that the treatment he was provided was ineffective.[10]

In addition to his testimony, a review of Plaintiff's medical records reveals the full extent of the substantial medical attention he received in regard to his arm pain and nerve pain. Beginning in November 2012, Plaintiff began receiving medical treatment from Southern Health Providers ("SHP"), a company that contracted with the ACJ to provide health care services to the inmates.

---

[10]*See Spears* Hearing Transcript [49-1] at 26-28.

SHP's contract with the ACJ came into effect on November 1, 2012.[11] In turn, Defendant Dr. Borum contracted with SHP to provide physician services beginning on February 1, 2013.[12]

On November 2, 2012, Plaintiff submitted a sick call, complaining that he had pain in his arm and that his medications were not working.[13] Plaintiff was seen the same day by Nurse Keith Sanders. Nurse Sanders performed a physical examination of the Plaintiff, recommended exercises for his hand to strengthen his muscles and promote blood circulation, and continued his prescriptions of Neurontin for his nerve pain and Flexeril to treat his muscle stiffness and pain.[14]

On December 2, 2012, Plaintiff submitted another sick call complaining that he was out of his medications, and that they were ineffective. The next day, Nurse Stacey Thompson notified the NCJ to pick up refills for Plaintiff's medication, and also placed Plaintiff on the list to see the then jail physician, Dr. Walter Gipson.[15] On December 6, 2012, Dr. Gipson examined the Plaintiff. They discussed the Plaintiff's medical history, and Dr. Gipson ordered the release of Plaintiff's medical information from UMMC. Dr. Gipson also ordered that Plaintiff's Neurontin dosage be doubled, and that he continue taking his regular dose of Flexeril.[16]

---

[11]*See* Health Services Agreement [49-2].

[12]*See* Independent Contractor Agreement [49-3]. Although Plaintiff was in the custody of the Adams County Sheriff and housed at the NCJ beginning in 2011, SHP and Dr. Borum began providing the Plaintiff with medical treatment beginning in November 2012 and February 2013, respectively. Accordingly, the undersigned will only outline and analyze the treatment provided to the Plaintiff since that time in respect to his claim against Dr. Borum

[13]*See* Medical Records [53] at 14.

[14]*Id.* at 15.

[15]*Id.* at 12.

[16]*Id*. at 3, 7.

On January 8, 2013, Plaintiff submitted another sick call slip stating that his medication was "not doing the trick [for him]." Plaintiff complained that he was still experiencing pain in this left arm and fingers, and that he was worried that his fingers were not receiving enough blood circulation.[17] Plaintiff was transported from the NCJ to the medical unit at the ACJ on January 11, 2013, in order to be examined by Nurse Faith Laughlin. Nurse Laughlin noted that Plaintiff complained of numbness and discomfort in his left arm. She also noted that he was able to move his arm without difficulty, open and close his left hand, and pull back the fingers on his left hand with no skin pulling. She noted that Plaintiff had normal coloring in his fingers, and that she could easily feel the Plaintiff's pulse in his left wrist. She noted that although Plaintiff claimed the medication did not work, he wished to continue taking the same medication.[18]

On May 16, 2013, Plaintiff was examined by Nurse Leah Pounders in response to his complaints of left arm pain. She noted the Plaintiff's heart rate, blood pressure and breathing rate, and placed him on the list to see the new jail medical unit physician, Dr. Borum.[19] Five days later, Plaintiff submitted a sick call request, stating that he had pain in his arm and that he needed to speak to a psychologist. He claimed that he had been out of his medications for months and that ibuprofen was not helping his pain.[20] Dr. Borum examined the Plaintiff that same day. Dr. Borum noted Plaintiff's complaints that Neurontin was not helpful, and that Plaintiff was feeling depressed. He

---

[17]*Id.* at 9-10. Plaintiff actually submitted two sick calls on January 8, 2013, but they are virtually identical.

[18]*Id.* at 6, 11.

[19]*Id.* at 5.

[20]*Id*. at 8.

prescribed Celexa[21] to the Plaintiff to treat his depression.[22]

Three days later on May 23, 2015, Plaintiff stated that his medication "may be helping a little." Nurse Leah Pounders noted that the Plaintiff denied any further needs at that time. She also noted that the Plaintiff "appear[ed] to be feeling better."[23] Nurse Pounders evaluated Plaintiff again on June 25, 2013. She noted that Plaintiff was smiling and calm, was able to make a fist with his left hand and open his left hand with assistance. Plaintiff stated that he was unable to rate his level of pain. Nurse Pounder recommended that Plaintiff use his right hand to assist in opening his left hand periodically throughout the day to prevent stiffness. Nurse Pounders discussed her evaluation with Dr. Borum, who ordered no change in Plaintiff's treatment, but rather instructed him to notify the NCJ staff if his symptoms worsened.[24]

"Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (affirming district court's dismissal of inmate's deliberate indifference claims as frivolous); *Harris v. Epps*, 523 Fed. App'x 275, 275 (5th Cir. 2013) (per curium) (affirming summary judgment where inmate's medical records reflected that he had received ongoing medical treatment).

While the Plaintiff clearly is dissatisfied with the Defendant's attempts to treat him, his own testimony as well as his medical records indicate that he received constitutionally adequate medical

---

[21]Also known as citalopram, Celexa is a selective serotonin reuptake inhibitor (SSRI) antidepressant. *See* Citalopram (Celexa), National Alliance on Mental Illness, https://www.nami.org/Learn-More/Treatment/Mental-Health-Medications/Citalopram-(Celexa) (last visited June 10, 2015).

[22]*See* Medical Records [53] at 5.

[23]*Id.*

[24]*Id.* at 4, 5.

care from Dr. Borum. The record reflects that Dr. Borum saw the Plaintiff on May 21, 2013–the same day Plaintiff submitted a sick call request. Defendant then performed a physical examination of the Plaintiff, listened to his complaints, and prescribed medication accordingly. Only three days later on May 24, 2013, Plaintiff reported he was doing better and that the medication was working. When Dr. Borum saw Plaintiff again on June 25, 2013, there was understandably no reason for him to alter Plaintiff's treatment, as it appeared that the current regimen was successful. The Court notes that although Plaintiff has responded to the other pending motions for summary judgment,[25] he did not file a response to Dr. Borum's summary judgment motion, and has submitted no evidence to the Court contradicting his medical records.

Plaintiff alleges that Dr. Borum declined to prescribe him additional medication and physical therapy, which Plaintiff believed that he needed. Plaintiff further alleges that the medications Dr. Borum prescribed did not work to his satisfaction. Based on the current record, the Court finds that Plaintiff's assertions are tantamount to a disagreement with his medical care. Such arguments are not well taken, as the Fifth Circuit has firmly and routinely held that unsuccessful medical treatment, as well as a prisoner's disagreement with a course of treatment, fail to establish deliberate indifference. *See, e.g., Gobert*, 463 F.3d at 346; *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Moreover, "the decision whether to provide additional treatment is a classic example of a matter for medical judgment." *See Domino*, 239 F.3d at 756. Accordingly, for the reasons outlined above, the Court finds that Defendant Dr. Borum is entitled to judgment as a matter of law.

---

[25]In Memorandum [66], Plaintiff only addresses Captain Fyre's motion for summary judgment. Likewise, Memorandum [76] only addresses the summary judgment motion of Sheriff Mayfield and Captain Tucker.

*Defendant Scott Frye*

Plaintiff alleges that Defendant Captain Frye was deliberately indifferent to his medical needs by failing to ensure that Plaintiff received a surgery he claims was ordered by his physicians.

As outlined above, deliberate indifference is "an extremely high standard" that encompasses "only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick*, 105 F.3d at 1061. The plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs." *Johnson,* 759 F.2d at 1238. Uncorroborated complaints that more treatment should have been ordered are insufficient to show deliberate indifference. *See Domino*, 239 F.3d at 756.

In this case, the undersigned finds that Plaintiff has failed to demonstrate a violation of a clearly established constitutional right. First, Although Plaintiff alleges that a UMMC physician ordered an immediate and mandatory surgery and that Defendant Frye was aware of this need, he has submitted no medical records or other evidence that supports this contention, and the Court's review of the record reveals none. In Plaintiff's discharge papers from UMMC on June 26, 2011, a UMMC physician recommended that Plaintiff "follow-up with the outside hospital surgeon who performed his operation," and further recommended that he "follow-up with neurosurgery in approximately 6 weeks to further evaluate his left upper extremity weakness and function at that time."[26] Moreover, Plaintiff's treatment notes from his July 7 and July 21, 2011, appointments with Dr. Seki likewise fail to demonstrate that Plaintiff unequivocally required surgery. Instead, Dr. Seki recommended "moist heat," and indicated that a consult with a neurologist or neurosurgeon would

---

[26]*See* Medical Records [63] at 1.

be beneficial.[27] Although Dr. Seki indicated that Plaintiff had some possible health problems, he also noted that Plaintiff was in no acute distress and that Plaintiff's gunshot wound was healing.[28] No other physician who examined the Plaintiff made any recommendations for surgery. Therefore, as there is no indication that Plaintiff's condition necessitated immediate surgery, the Court finds that Defendant Frye could not have been deliberately indifferent by intentionally ignoring such a need. *See Shafer v. Carmona*, 71 Fed. App'x 350, 354 (5th. Cir. 2003) (affirming summary judgment in favor of defendant warden where plaintiff produced a memo allegedly written by the warden outlining plaintiff's care at local hospital and possible need for future treatment, but where there was no indication that warden knew plaintiff required immediate surgery).

Second, the record in this case does not suggest that Defendant Frye "refused to treat [the Plaintiff], ignored his complaints, intentionally treated in incorrectly or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."*Johnson*, 759 F.2d at 1238. Rather, the evidence before the Court reflects that Defendant Frye made several attempts to secure follow-up appointments for the Plaintiff before he was transferred to the custody of the Adams County Sheriff's Department. Plaintiff's medical records include a memorandum outlining Frye's attempts to contact the surgeon who performed Plaintiff's operation at the Natchez Regional Hospital, as well as a neurosurgeon recommended by Dr. Seki. Specifically, the memorandum provides that Defendant Frye called UMMC regarding a neurosurgeon appointment on July 29, 2011, but that UMMC responded that it did not provide treatment to inmates unless it was the only facility in the state that could do so. The memorandum also reflects that Frye scheduled

---

[27]*See* Treatment Notes [63-2] at 3.

[28]*Id.* at 1.

13

an appointment for Plaintiff to see Dr. Kyper, the physician who performed the initial surgery on his gunshot wound, for July 29, 2011, but that the appointment was rescheduled to August 5, 2011. Defendant Frye noted that Dr. Seki was able to secure an appointment for the Plaintiff with Dr. Ilercil, a local neurosurgeon, and was awaiting the date and time.[29] Thereafter, Plaintiff was assigned to the custody of Adams County Sheriff. Captain Frye has submitted a sworn affidavit corroborating the facts set forth in Plaintiff's medical records.[30]

Finally, although the analysis above assumes that Captain Frye was responsible for Plaintiff's medical care, the Court notes that Plaintiff has not established this notion as fact. Plaintiff was transferred from UMMC to the NCJ on June 26, 2011. The Plaintiff appeared in Natchez Municipal Court on July 29, 2011, where he was assigned to the custody of the Sheriff of Adams County due to pending charges of aggravated assault of a police officer and armed robbery.[31] However, according to both the Plaintiff and Captain Frye, Plaintiff remained housed at the NCJ due to various reasons for the duration of his time as a pre-trial detainee.[32] Captain Frye avers that from July 29, 2011, the Adams County, and not the NCJ, was responsible for making determinations of Plaintiff's medical care, and that barring an emergency situation, all requests for treatment submitted by the Plaintiff were forwarded to the ACJ.[33] Plaintiff does not address this issue in his response to Defendant Frye's motion for summary judgment. However, due to the analysis above, and the

---

[29]*See* Medical Records [63-3] at 13.

[30]*See* Frye Affidavit [58-6] at 1.

[31]*See* Mittimus [58-8].

[32]*See* Spears Hearing Transcript [54-2] at 20-22; Frye Affidavit [58-6].

[33]*Id.*

conclusion of the undersigned that Defendant Frye was not deliberately indifferent, the Court finds it unnecessary to resolve this issue.

The Court finds that Plaintiff has failed to establish a genuine issue of material fact regarding his Eighth Amendment claim of deliberate indifference against Defendant Frye. Accordingly, the Court finds that Defendant Frye is entitled to judgment as a matter of law.

**Claims Regarding the Supervisory Responsibilities of Defendants Mayfield and Tucker**

Plaintiff names Adams County Sheriff Charles Mayfield and ACJ Captain Ed Tucker as Defendants in this matter. Plaintiff asserts that, as individuals with supervisory responsibilities, Sheriff Mayfield and Captain Tucker should have provided Plaintiff with adequate medical treatment. He also alleges that Sheriff Mayfield should not have implemented a policy that requires an inmate to obtain a court order to receive certain medical treatment.

*Respondeat Superior*

It is well settled that § 1983 does not create supervisory or *respondeat superior* liability. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002); *see also Alton v. Tex. A & M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999) ("Only the direct acts or omissions of government officials, not the acts of the subordinates, will give rise to individual liability under § 1983."); *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."). A supervisor may only be held liable if: (1) he was personally involved in the constitutional deprivation; or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.* (citing *Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir. 1985), *cert denied*, 471 U.S. 1126 (1985)).

In this case, Plaintiff has failed to establish that Defendants Mayfield or Tucker were

15

personally involved in a constitutional violation, or that there was any causal connection between the their conduct and a violation. Plaintiff conceded at the *Spears* hearing that Mayfield and Tucker are prison administrators, and not medical providers.[34] Furthermore, Plaintiff also admitted at the hearing that he never spoke or corresponded with Mayfied or Tucker regarding his treatment and does not know whether either of these Defendants were aware of his requests for treatment.[35]

Defendants Mayfield and Tucker have submitted sworn affidavits stating that they had no knowledge that Plaintiff required additional medical care.[36] In his response to the Defendants' motion for summary judgment, Plaintiff argues that Mayfield and Tucker were subjectively aware of his need for additional medical treatment based on sick call slip he submitted at the ACJ. The sick call slip contains a handwritten response from an ACJ employee: "Let Smith know he has to bond out."[37] However, there is no indication that Mayfied or Tucker authored this note or even knew of its existence. Plaintiff has submitted no other evidence in support of this claim.

Accordingly, for these reasons, the Court finds that Defendants Mayfield and Tucker are entitled to judgment as a matter of law on this ground. *See Wagner v. Bay City, Tex.,* 227 F.3d 316, 325 (5th Cir. 2000) ("With no evidence indicating that [Defendants] had any direct involvement in the treatment decisions at issue, there is no way a reasonable jury could find their actions violated the rights of [the plaintiff].").

*Adams County Jail Policy*

---

[34]*See Spears* Hearing Transcript [54-2] at 20, 24.

[35]*See* Omnibus Order [33] at 3.

[36]*See* Mayfield Affidavit [54-3]; Tucker Affidavit [54-4].

[37]*See* Memorandum [76] at 4.

As for Plaintiff's claim against Defendant Mayfield concerning the ACJ policy for inmate surgical procedures, the Court finds that he has failed to establish a constitutional violation sufficient to overcome a motion for summary judgment. The Fifth Circuit has held that supervisory liability may exist if supervisory officials "implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a the constitutional violation." *Thompkins*, 828 F.2d at 304 (internal quotations omitted). The Fifth Circuit has also held that the "existence of a constitutionally deficient policy cannot be inferred from a single wrongful act." *O'Quinn v. Manuel*, 773 F.2d 605, 610 (5th Cir. 1985) (internal citations omitted). Thus, Sheriff Mayfield may not be held liable unless he knew that the ACJ's policy "was so deficient as to expose prisoners to substantial risk of significantly unmet serious medical needs–*i.e.*, was unconstitutional–and failed to properly attempt to correct it." *Thompkins*, 828 F.2d at 304.

Plaintiff alleges that Sheriff Mayfield implemented a policy at the ACJ requiring inmates to obtain a court order before receiving surgery. In support of this assertion, Plaintiff states that his younger brother called the Adams County Sheriff's Department regarding Plaintiff's need for surgery, and was told that Plaintiff needed a court order.[38] Beyond this hearsay statement, Plaintiff has offered no evidence to support his claim that such a policy even existed, or that Mayfield was aware of it and failed to correct it.[39]

---

[38]*See Spears* Transcript [54-2] at 21; Plaintiff's Affidavit [76-2] at 6.

[39]Although he responded to Defendant Mayfield's summary judgment motion, Plaintiff does not address this issue in his brief. *See* Memorandum [76]. He attaches to the response, *inter alia*, his own sworn affidavit reiterating the allegations set forth at the *Spears* hearing. *See* Affidavit [76-2]. The undersigned notes that Sheriff Mayfield has submitted a sworn affidavit attesting that it is *not* the policy of the ACJ to require a court order before an inmate may receive surgery. *See* Mayfield Affidavit [54-3].

At this stage of the proceedings, Plaintiff can longer rest on his pleadings. *Celotex*, 477 U.S. at 325-26. Plaintiff has adduced no evidence whatsoever that the ACJ failed to deliver necessary medical care to any other inmate, and the record reflects no competent evidence that the ACJ's policy for inmate medical treatment is constitutionally inadequate. Accordingly, for these reasons, the Court finds that Sheriff Mayfield is entitled to judgment as a matter of law.

## **CONCLUSION**

For the reasons outlined above, the Court finds that Defendants' Motions for Summary Judgment [49], [54] & [58] should be GRANTED.

IT IS, THEREFORE, ORDERED:

1. That Motion for Summary Judgment [49] filed by Defendant Dr. Charles Borum, Motion for Summary Judgment [54] filed by Sheriff Charles Mayfield and Captain Ed Tucker, and Motion for Summary Judgment [58] filed by Captain Scott Frye are GRANTED;

2. That a separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED this the 17th day of June, 2015.

        s/ Michael T. Parker
        United States Magistrate Judge